AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 20-MJ-7086
A cellular telephone as further described in Attachment A )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and specifically incorporated herein by reference.

located in the ____Central____ District of ____Illinois____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and specifically incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2101 | Inciting a riot |

The application is based on these facts:
See affidavit of FBI Special Agent Andrew Huckstadt

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Andrew M. Huckstadt
*Applicant's signature*

Andrew Huckstadt, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

s/ Eric I. Long

Date: 06/15/2020

*Judge's signature*

City and state: Urbana, IL

Eric I. Long, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Andrew M. Huckstadt, being first duly sworn on oath, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – that is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The device belongs to SHAMAR N. BETTS, who has been charged via criminal complaint with inciting a riot in violation of 18 U.S.C. § 2101.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Champaign, Illinois, Resident Agency of the Springfield, Illinois, FBI Field Office. Previously, I was assigned to the Memphis, Tennessee, FBI Field Office. I have been a Special Agent with the FBI since August 2008. Through my employment with the FBI, I have investigated numerous criminal violations relating to child exploitation, violent incident crime, kidnapping, drug trafficking, public corruption, civil rights and fraud. I have received training in these areas and have had the opportunity to investigate, and assist in the investigation of, these and other offenses – to include having been the affiant on numerous search warrants, arrest warrants, and criminal complaints.

3. I am also a member of the FBI Joint Terrorism Task Force. I investigated domestic terrorism matters while at the Memphis, Tennessee, FBI Field Office. I have

been assigned to work domestic terrorism matters since December of 2019. I was the affiant in support of the pending criminal complaint against BETTS.

4. The statements contained in this affidavit are based in part on my own investigation, information provided by other law enforcement officers, information provided by other witnesses, and my experience and background as a law enforcement officer. The information contained in this affidavit is not an exhaustive account of everything I know about this case. Rather, it is only the facts that I believe are necessary to establish probable cause to issue the requested warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black and silver iPhone, model A1586, IMEI: 356149090494571, cellular telephone in a green protective case (hereinafter the "Device"), seized pursuant to a lawful arrest described further below. The Device is currently located at the FBI Champaign Resident Agency in Champaign County in the Central District of Illinois.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. Through the performance of my official duties as a Special Agent with the FBI, I have become acquainted with the following facts. On May 31, 2020 at approximately 10:31 a.m., Champaign Police Department Intelligence Analyst (IA) Sarah Burgener observed a Facebook post made by Facebook user "Shamar Bett's" (Facebook URL:

2

https://www.facebook.com/shamar.betts.144/UserID#100044203782670). The post, which was preserved by IA Burgener, stated as follows (with the exclusion of several emoji characters): "I'm just the messenger We're literally sitting on our ass watching the whole country and even others fight for our black rights Y'all think we don't suffer through inequality here EVERYDAY We gotta put Champaign/Urbana on the map mfs gone hear and fear us too. SLIDE let's get busy Justice for George FUCK12." A copy of this post is attached hereto as Exhibit A. I am aware that George Floyd was killed during an arrest in Minneapolis, Minnesota on May 25, 2020.

8. This post was accompanied by a flyer advocating for a riot at Market Place Mall (located at 2000 N. Neil Street, Champaign, Champaign County, in the Central District of Illinois). The flyer further contained a meeting time of 3 p.m. and specific instructions to "Bring friends & family, posters, bricks, bookbags etc." as well as a statement indicating "After the mall we hitting the whole PROSPECT & NEIL." These words were overlaid on a stock image of a riot including a burning vehicle. A copy of this post is attached hereto as Exhibit B.

9. Officers of the Champaign Police Department responded to the area to observe the protest and respond to any acts of violence. At approximately 2:36 p.m., a group of approximately 50 to 75 people were reported gathering at the mall. The group continued to grow in size. At approximately 3:12 p.m. the group began breaking out windows at businesses located in the mall and looting merchandise from within.

10. Facebook user "Shamar Bett's" posted a Facebook Live video during this time stating, "Look what a nigga just started…look what a nigga just started. We out

here…we out here…we out here…we out here. All ya'll talking that shit under my post…we out here. Fuck that I needs that…we out here. " The user can also been seen carrying multiple items, to include numerous pairs of khaki pants with Old Navy tags on them. Although the user's face cannot be seen on the video, at one point his left leg and foot are visible and he can been seen wearing blue jogger-style pants and black shoes identical to those depicted in a Facebook photograph posted by "Shamar Bett's" on May 31, 2020 at 1:29 p.m.

11.  A bystander used a cellular telephone to record video of the looting taking place at Market Place Mall the afternoon of May 31, 2020. The video captured BETTS wearing blue jogger-style pants, black shoes, a graphic t-shirt, black jacket, and black hat identical to those depicted in the above-referenced Facebook photograph posted around 1:29 p.m. BETTS is depicted carrying multiple items, including khaki pants, and walking from the direction of Old Navy. As BETTS walked by the bystander, he stated, "I started this shit."

12.  Additional law enforcement resources were deployed to the Market Place Mall to respond to the riot and attempt to control the group, which continued to grow in size and began vandalizing and/or looting other businesses in the area including Gordman's, Kohls and TJ Maxx. The group then moved on to the shopping portion of N. Prospect Avenue and continued vandalizing and/or looting numerous stores in the area, to include Meijer, Best Buy, Shoe Carnival and Walmart. This activity continued throughout the night and into the early morning hours of June 1, 2020. By the end of the night, approximately 50 businesses in the area had been vandalized and/or looted.

13. Champaign Police Department investigators searched local law enforcement databases and obtained a known photograph of BETTS. The known photograph of BETTS appeared to be the same individual depicted in photographs on "Shamar Bett's" Facebook page. In addition, a known photograph of BETTS obtained from the Urbana Park District Forest Preschool Handbook appeared to be the same individual depicted on "Shamar Bett's" Facebook page as well as the known photograph of BETTS.

14. On May 31, 2020 at approximately 4:30 p.m., Champaign Police Department Detective Corey Phenicie obtained video footage of the group's looting activities. This video was recorded live and also was available later online. At approximately the 1 minute and 41 second mark of the video, an individual matching BETTS's description can be seen exiting the Old Navy store located at the Market Place Mall with a handful of clothing items to include what appear to be multiple pairs of khaki pants. The clothing worn by this individual appears to be the same as the clothing worn by the user depicted in the aforementioned Facebook Live video.

15. Champaign Police Department investigators submitted a preservation request to Facebook on June 1, 2020 after the initial post by "Shamar Bett's" inciting the riot appeared to have been deleted. Following the initial referenced post, another post was found on "Shamar Bett's" account, which reads as follows (with the exclusion of several emoji characters): "They tryna portray me to be some type of monster yet I'm a fucking hero if we don't stand for something we'll fall for anything love my black people #J4G."

16. On the evening of June 1, 2020, Champaign Police Department obtained a state arrest warrant for BETTS charging him with Burglary in violation of Illinois state law,

720 ILCS 5/19-1(a). Around June 2, 2020, investigators searched BETTS' known apartment in Urbana, Illinois, pursuant to a state search warrant, but did not locate either him or his cellular telephone at the apartment. Investigators also were unable to locate BETTS in the Champaign area.

17. On the morning of June 5, 2020, BETTS was located by the United States Marshals Service Gulf Coast Regional Fugitive Task Force in the State of Mississippi. Officers with the task force arrested BETTS on the outstanding state warrant. Officers with the task force also seized a black and silver iPhone, model A1586, IMEI: 356149090494571, cellular telephone in a green protective case (the "Device") from BETTS incident to his arrest. The task force shipped the Device to the Champaign Police Department via controlled courier. I obtained custody of the Device on the afternoon of June 10, 2020, from the Champaign Police Department and entered it into evidence at the FBI.

18. Following BETTS's arrest by the fugitive task force, he was charged with inciting a riot in violation of 18 U.S.C. § 2101 via a criminal complaint filed in the Central District of Illinois for which I was the affiant.

19. Around June 11, 2020, agents of the FBI interviewed an individual who had recently resided with BETTS in an apartment in Urbana, Illinois. The individual stated that the individual had advised BETTS not to post the information regarding the riot on social media, but BETTS did so anyway. The individual stated that BETTS used a cellular telephone with a green protective case.

20. Based on my training and experience, I know that Facebook is a social networking website/application that is commonly accessed by users through iPhones and

other similar devices. The Device is currently in storage at the FBI Champaign Resident Agency in Champaign, Illinois. Based on my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular

      telephones may also include global positioning system technology for determining the location of the device.

b. GPS: The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by electronic devices on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (*e.g.*, 121.56.97.178). Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some devices have static—that is, long-term—IP addresses, while other devices have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a cellular telephone and GPS navigation device. I am also aware that the Device is capable of connecting to the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described in the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  f. I know that when an individual uses an electronic device to incite a riot in violation of 18 U.S.C. § 2101, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

  25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection to determine whether it is evidence described by the warrant.

  26. *Manner of execution.* Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

        s/ Andrew M. Huckstadt
        _____
        Special Agent Andrew M. Huckstadt
        Federal Bureau of Investigation
        Champaign, Illinois

Subscribed and sworn to before me this 15th day of June 2020.

        s/ Eric I. Long
        _____
        ERIC I. LONG
        United States Magistrate Judge

EXHIBIT A

📶 Verizon LTE     10:31 AM     ✴ 37% 🔋

**Shamar Bett's**
43 mins · 🌐

I'm just the messenger  We're literally sitting on our ass watching the whole country and even others fight for our black rights  Y'all think we don't suffer through inequality here EVERYDAY 👤 We gotta put Champaign/Urbana on the map mfs gone hear and fear us too. SLIDE let's get busy 🆗 ‼️ Justice for George FUCK12✊🏾



**BlackLivesMatter**
RIOT @MarketPlace Mall
Time: 3

Write a comment...

EXHIBIT B



## ATTACHMENT A

The property to be searched is a black and silver iPhone, model A1586, IMEI: 356149090494571, cellular telephone in a green protective case (the "Device"). The Device is currently located at the FBI Champaign Resident Agency located at 2117 W. Park Court, Champaign, IL 61821 in a secure evidence storage room. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 2101 (Inciting a Riot) and involve BETTS since May 25, 2020, to the present, including:

 a. Any information, including any internet and/or social media posting, text message, voicemail, phone log, photograph, video, and/or web browsing history, related to rioting and/or looting;

 b. Any information related to other individuals, groups, or organizations involved in -- or aiding and abetting -- inciting, organizing, promoting, encouraging, participating in, or carrying on a riot, or committing any act of violence in furtherance of a riot, including but not limited to, contact information, telephone numbers, email accounts,

 c. Any information recording BETTS's location, schedule, or travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Device to communicate with any social media websites, including but not limited to, Facebook and/or Facebook Live, including:

 a. records of Internet Protocol addresses used;

  b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

  c. any data that was sent and received showing how the electronic device was used.

  4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

  5. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.